UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL COTTON,                         )
                                        )
                Petitioner,             )
                                        )
        v.                              )       No.  4:03CV407 DJS
                                        )                       (TIA)
DON ROPER,                              )
                                        )
                Respondent.             )

## REPORT AND RECOMMENDATION

This matter is before the Court on Missouri state prisoner Brian T. Stewart's <u>pro se</u> petition

for writ of habeas corpus under 28 U.S.C. § 2254.  All pretrial matters were referred to the

undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

On December 18, 1996, Petitioner was convicted by a jury in the Circuit Court of the City

of St. Louis, Missouri, of one count of first degree murder and one count of armed criminal action.

(Resp. Exh. B at 75-76; <u>State v. Cotton</u>, 964 S.W.2d 890 (Mo. Ct. App. 1998)).  On January 31,

1997,  Petitioner was sentenced to life imprisonment without the possibility of parole on the murder

count and a concurrent term of life imprisonment on the armed criminal action count.  (Resp. Exh.

B at 83-86).  Petitioner appealed the judgment, and on April 21, 1998, Petitioner's convictions and

sentences were affirmed on direct appeal by the Missouri Court of Appeals.  (Resp. Exh. E; <u>Cotton</u>,

964 S.W.2d 890).  Petitioner thereafter filed a <u>pro se</u> Motion to Vacate, Set Aside or Correct the

Judgment or Sentence under Missouri Supreme Court Rule 29.15.  (Resp. Exh. F at 2-8).  On

February 22, 1999, Petitioner's appointed counsel filed a First Amended Motion to Vacate, Set Aside

or Correct Judgment.  (Resp. Exh. F at 13-50).  The post-conviction relief court denied Petitioner's

amended motion without an evidentiary hearing on May 13, 1999.  (Resp. Exh. F at 51-65).  On

February 22, 2000, the Missouri Court of Appeals affirmed in part and remanded in part the denial of Petitioner's post-conviction relief. (Resp. Exh. J; <u>Cotton v. State</u>, 25 S.W.3d 507 (Mo. Ct. App. 2000)). In relevant part, the Missouri Court of Appeals remanded to the post-conviction relief court for an evidentiary hearing for "consideration of whether counsel was ineffective for failing to call Charlene Cotton, Lillie Clark, Antwan Clark, Antonio Moore and Linda Moore" as witnesses. (Resp. Exh. J at 3; <u>Cotton</u>, 25 S.W.3d at 509). After an evidentiary hearing on December 11, 2000, the post-conviction relief court denied Petitioner's amended motion on May 24, 2001. (Resp. Exhs. K and L at 5-9). On March 26, 2002, the Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction relief. (Resp. Exh. O; <u>Cotton v. State</u>, 71 S.W.3d 246 (Mo. Ct. App. 2002)). Petitioner pursued no other action in state court. The instant petition for writ of habeas corpus, signed by Petitioner on March 25, 2003, and received by this Court on March 31, 2003, was filed on April 3, 2003, upon Petitioner being granted leave to proceed in this cause <u>in</u> <u>forma</u> <u>pauperis</u>.

Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis City. In the instant petition for writ of habeas corpus, Petitioner raises three grounds for relief:

(1) That Petitioner's conviction violated his right to present a defense in that the instructions as read and given to the jury permitted the jury to convict considering the prior relationship between the victim and Petitioner;

(2) That the trial court erred in not declaring a mistrial or, in the alternative, in failing to instruct the jury to disregard statements by the prosecutor in closing argument; and

(3) That he received ineffective assistance of trial counsel in that counsel failed to investigate and present witnesses who would have testified as to specific acts of violence committed by the victim as well as to the victim's reputation for violence.

In response, Respondent contends that Petitioner has exhausted his claims inasmuch as they have

been properly raised in the state courts, or because Petitioner has no available non-futile state remedies by which he could present these claims.

**Claims Addressed on the Merits**

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the Missouri Court of Appeals summarized

the facts regarding the issue on appeal:

Defendant was charged with murder in the first degree and armed criminal action arising from an altercation in which Percy Phillips ("victim") was killed. This appeal is from his conviction, by a jury, of first degree murder, in violation of section 565.020, RSMo 1994, on which he was sentenced to life imprisonment without the possibility of parole, and of armed criminal action, in violation of section 571.015 RSMo 1994, on which he was sentenced to a concurrent term of life imprisonment. Defendant contends that the trial court plainly erred in not giving a self-defense instruction tendered by him and in not declaring a mistrial, *sua sponte*, because of statements made in the prosecutor's closing argument. We find no error and affirm.

On the afternoon of May 29, 1995, the victim, along with his brother, John Phillips ("John"), and a friend ("Alvin"), went to a store on the corner of Magnolia and Minnesota in St. Louis. Defendant, accompanied by three friends, was also present at the store. John saw the victim say something to defendant. The victim turned back around, and defendant produced a gun and shot the victim several times. John testified at trial that defendant had his gun out as soon as the victim walked out of the store. He further stated that defendant shot victim in the back, and then stood over him and shot him three more times after he had fallen to the ground. John also testified that victim did not have a weapon. Before victim died, he told Alvin that defendant shot him.

The cause of victim's death was a gunshot wound to his chest. He also had three other gunshot wounds, all to the buttocks. The bullet fragments recovered from the victim's body were .380 caliber. Six .380 caliber shell casings were recovered from the scene of the shooting.

On August 31, 1995, defendant turned himself in to the police. After receiving a Miranda warning, defendant gave an audiotaped statement in which he admitted he shot the victim. Defendant, in his confession, did not assert that he thought the victim had a gun, or that the victim had threatened him in the past or at the time of the shooting.

At trial, defendant's girlfriend testified that around May 29, 1995, defendant told her that he had shot victim with a .380. She stated that victim never mentioned anything about victim having a gun or that he had acted in self-defense. Both she and defendant testified that about a year before the shooting, the victim had told defendant's mother he was going to kill defendant. Defendant stated that he took the victim's comment as a threat upon his life.

Defendant further testified that on the day of the shooting when defendant emerged from the store, the victim turned to him and said, "What's up." Defendant

stated that those words were street slang meaning there was going to be trouble. He testified that the victim then reached behind his back. Believing the victim was reaching for a gun and meant to kill him, defendant pulled out his own gun and shot the victim.

In addition, on cross examination, John testified that the victim, a couple of years before his death, had shot their cousin in the leg during a dispute over ten dollars. John stated that the incident was common knowledge in the neighborhood where he, the victim, and defendant, all lived.

Resp. Exh. E at 1-3. Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

A.    Ground 1

In Ground 1of the instant petition, Petitioner claims that his conviction violated his right to present a defense in that the instructions as read and given to the jury permitted the jury to convict considering the prior relationship between the victim and Petitioner. Petitioner further contends that the trial court erred by excluding paragraphs two and four of MAI-CR3d 306.06 Part C inasmuch as the victim's reputation for aggressiveness and the acts of violence by the victim were not considered by the jury, thereby depriving Petitioner of his right to a fair trial.

Petitioner raised these claims on direct appeal of his conviction. (Resp. Exh. C at 9-15). The Missouri Court of Appeals denied Petitioner's claims exercising its discretion to review his claims for plain error finding that the claims had not been properly preserved for appellate review. (Resp. Exh. E at 3-5). On direct appeal, the Missouri Court of Appeals recognized that Petitioner failed to show manifest injustice or miscarriage of justice resulted from the trial court's rulings regarding the instructions. In relevant part, the Missouri Court of Appeals opined as follows:

In his first assignment of error, defendant contends that the trial court erred in giving Instruction No. 9, a self-defense instruction, patterned after MAI-CR3d 306.06, rather than his tendered Instruction A which was on the same subject. Defendant first complains as to the substitution of the words "evidence of an argument" for "evidence of threats" in Instruction No. 9's paragraph regarding the prior relationship between the victim and defendant.

Defendant has waived any claim of error with regard to this substitution. Supreme Court Rule 28.03 provides that "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

In State v. Martindale, we held that the defendant, by failing to object at anytime during the trial to the giving of a second degree murder instruction as a lesser included offense of first degree murder, waived the issue. "We believe that if the revised version of Rule 28.03 is to have any effect, the failure to specifically object must constitute a waiver."

Here, not only did defendant's counsel fail to object to the substitution, but he voluntarily agreed to the prosecutor's request that the words be changed. Under Rule 28.03, therefore, defendant has waived any error relating to this portion of the instruction.

Defendant next protests the exclusion of paragraphs 2 and 4 of MAI-CR3d 306.06 Part C. Defendant requested these component instructions, formulated them in the terms of the model instruction, and tendered them as part of Instruction A which was refused. He contends that the exclusion of these components from Instruction 9 was error.

Paragraph 2 of MAI-CR3d 306.06 refers to the victim's reputation for aggressiveness. The only witness who testified for the defense was the defendant himself, but he did not testify to the victim's reputation. The only witness who defendant might argue testified regarding the victim's reputation was the victim's brother, John. John testified that the victim once shot their cousin in a dispute over ten dollars. John also stated that the incident was common knowledge in the neighborhood where both the victim and defendant resided.

This testimony as to the witness' personal knowledge of a single violent act by the victim, with no comment on the victim's general reputation for violent behavior, does not qualify as reputation evidence. This testimony, therefore, cannot support the instruction component discussing the victim's reputation for violence.

Paragraph 4 of MAI-CR3d 306.06 refers to specific acts of violence by the victim. While the testimony by the victim's brother did show that the victim committed a violent act, it does not show the defendant's knowledge. Paragraph 4 requires the evidence to show "acts of violence not involving the defendant committed by [the victim] and that the defendant was aware of these acts." John's testimony that the victim's shooting of his cousin was generally known in the neighborhood is not sufficient evidence that the defendant was aware of the incident, and the defendant did not testify that he was aware the victim shot his own cousin.

No evidence was presented at trial to support the giving of Paragraphs 2 and 4 of MAI-CR3d 306.06. The trial court did not err in excluding these components from Instruction No. 9. Point one is denied.

(Resp. Exh. E at 3-5 (internal footnote and citations omitted)).

The state court's rejection of Petitioner's claims constituted adjudication on the merits of those claims and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief

is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that in a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. See Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979). Nonetheless, not every deficiency in a jury instruction rises to the level of a due process violation. The question, rather, is "'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Boyde v. California, 494 U.S. 370, 378 (1990) (quoting Cupp, 414 U.S. at 146-47). If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde, 494 U.S. at 380). The fact that an instruction is allegedly incorrect under state law is not a basis for habeas relief. Id. at 71-72.

To the extent Petitioner argues that Missouri law required that other approved instructions be given in the circumstances of the offense charged, a claim of instructional error under state law is not cognizable in federal habeas actions. Instead, this Court must determine whether the instructions as given violated Petitioner's right to due process. Estelle, 502 U.S. at 71-72. "[E]ven if the failure to give [a] self-defense instruction were a violation of state law, habeas relief could only be granted if the failure to instruct the jury on self-defense amounted to 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the

rudimentary demands of fair procedure.'" Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997) (citations omitted). For the reasons stated above, the instructions, when viewed as a whole, instructed the jury to convict Petitioner only if it found Petitioner to have committed all elements of the offenses beyond a reasonable doubt. Upon review of the entire charge to the jury, there is no reasonable likelihood, on the evidence adduced at trial, that the jury applied the instructions in a way that violated the Constitution or which resulted in a conviction which violated Petitioner's right to due process.

In this cause, Petitioner challenges the self-defense instruction, patterned after MAI-CR3d 306.06, given at trial. As noted by the Court of Appeals, Petitioner has waived any claim of error regarding this instruction inasmuch as his counsel not only failed to object but, in fact, voluntarily agreed to the prosecutor's request. (Resp. Exh. E at 4; Resp. Exh. A, Vol. III at 456). Further, the changing of the words to "evidence of threats" from the words "evidence of an argument" in the instruction was not misleading and arguably benefitted Petitioner inasmuch as the language directed the jury to consider any threats the victim made to Petitioner in determining whether Petitioner shot in self defense. Because Petitioner is unable to show that the language rendered his trial fundamentally unfair, he is not entitled to relief.

Petitioner's contention that he was entitled to specific language regarding the victim's reputation for aggressiveness is also without merit. "A defendant pleading self defense 'must show that he was aware of the specific act or acts of violence' at the time he defended himself." Hall v. Luebbers, 296 F.3d 685, 700 (8th Cir. 2002) (quoting State v. Waller, 816 S.W.2d 212, 216 (Mo. 1991). Petitioner contends that the trial court erred by excluding paragraphs two and four of MAI-CR3d 306.06 Part C inasmuch as the victim's reputation for aggressiveness and the acts of violence

by the victim were not considered by the jury, thereby depriving Petitioner of his right to a fair trial. Because a self-defense instruction was given, Petitioner is attacking only the specific language used in the instruction, and this claim is a matter of state law and not a basis for habeas relief. <u>Clemmons v. Delo</u>, 177 F.3d 680, 685 (8th Cir. 1999). As noted by the Missouri Court of Appeals, no evidence was presented at trial to support the giving of Paragraphs 2 and 4 of MAI-CR3d 306.06. Petitioner was the only defense witness at trial, and he did not testify as to the victim's reputation. The only witness who testified regarding the victim's reputation was the victim's brother who testified that the victim shot their cousin in a dispute of over ten dollars, and the incident was common knowledge in the neighborhood where both the victim and Petitioner resided. The Missouri Court of Appeals concluded that this testimony did not qualify as reputation evidence supporting the giving of paragraph 2 inasmuch as the testimony demonstrated the witness' personal knowledge of a single violent act by the victim, not the victim's general reputation for violent behavior. Likewise, the Missouri Court of Appeals noted that Petitioner did not testify that he was aware the victim shot his cousin, and thus there was insufficient evidence showing Petitioner was aware of the incident which would support the inclusion of paragraph 4.

Accordingly, the decision of the state court in denying Petitioner relief on his claim of instructional error was not "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Nor was the state court unreasonable in its determination to deny Petitioner relief of these claims of instructional error. The claims raised in Ground 1 of the instant petition should therefore be denied.

B.     <u>Ground 2</u>

In Ground 2 of the instant petition, Petitioner claims that the trial court erred in not declaring

a mistrial or, in the alternative, in failing to instruct the jury to disregard statements by the prosecutor in closing argument.

Petitioner raised these claims on direct appeal of his conviction. (Resp. Exh. C at 16-25). The Missouri Court of Appeals denied Petitioner's claims exercising its discretion to review his claims for plain error finding that the claims had not been properly preserved for appellate review. (Resp. Exh. E at 5-8). On direct appeal, the Missouri Court of Appeals recognized that the prosecutor's statements neither violated Petitioner's attorney-client privilege nor rose to the level of assailing the personal character or integrity of defense counsel but merely constituted a comment on the evidence before the jury. Petitioner failed to show manifest injustice or miscarriage of justice resulted from the prosecutor's statements during closing argument. In relevant part, the Missouri Court of Appeals opined as follows:

> In his second point, defendant contends that the trial court plainly erred in not declaring a mistrial, or, alternatively, in failing to instruct the jury to disregard statements by the prosecutor in closing argument. Defendant argues that the prosecutor's statements "suggested to the jury that defense counsel had acted improperly and had helped the defendant concoct a spurious self-defense case; and impermissibly shifted the burden of proof to the defense."

> This point is couched in terms of the trial court committing plain error for failing to "halt the prosecutor's improper closing arguments" and for failing to instruct the jury to disregard them *sua sponte* since defendant's trial counsel did not request that relief, although he did object to the argument. It is the responsibility of counsel to request admonition to the jury or a mistrial if it is warranted. If no such request is made, it is assumed that counsel is satisfied with the action taken by the trial court and a subsequent complaint that additional corrective measures were needed comes too late.

> Nevertheless, we have reviewed defendant's point for plain error. The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summaries. Trial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances. Relief should rarely be granted on assertions of plain error as to matters contained in closing arguments, because trial strategy looms as an important

consideration and such assertions are generally denied without explication. Alleged errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury.

Although his point on appeal does not so provide, defendant appears to argue that the prosecutor's statements violated his attorney-client privilege. The prosecutor's argument, however, in no way referenced the substance of privileged attorney-client communications or work product. Moreover, defendant has not demonstrated how the trial court's failure to *sua sponte* stop the prosecutor's closing argument and instruct the jury to disregard the remarks has caused a manifest injustice.

Defendant next maintains that the prosecutor's remarks constituted a reference to facts not in evidence in that he asserted that defendant's self-defense claim was spurious. A review of the transcript in this case reveals that the prosecutor was not referring to facts outside the record, rather, he was commenting on the evidence that was before the jury. Prosecutors are entitled to argue matters supported by the evidence and reasonable inferences therefrom. That includes pointing out to the jury an absence of evidence to support a theory suggested by the defendant.

Defendant also asserts that a portion of the prosecutor's closing argument constituted an attack on his trial counsel's character. A prosecutor may comment on the tactics, technique and strategy of defense counsel, provided such attacks do not rise to the level of assailing the personal character or integrity fo counsel. The comments herein do not rise to the level of assailing the personal character of defense counsel. The prosecutor was merely commenting on the evidence presented at trial and the lack of support for defendant's theory of self-defense.

Finally, defendant alleges that a portion of the prosecutor's closing argument improperly shifted the burden of proof. The statements, taken in context, were an attempt by the prosecutor to argue that defendant's theory of self-defense was implausible in light of the testimony of the state's two eyewitnesses. As explained above, the prosecutor has a right to point out to the jury an absence of evidence to support a theory suggested by the defendant. The prosecutor did not shift the burden of proof to defendant.

The prosecutor's statements did not violate defendant's attorney-client privilege, did not rise to the level of assailing the personal character or integrity of defense counsel, and merely constituted a comment on the evidence before the jury. Point two is denied.

(Resp. Exh. E at 5-8 (internal citations omitted)).

Improper closing argument violates due process when the argument is so egregious that it

renders the entire trial fundamentally unfair.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994).  To decide whether improper argument violates due process, the Supreme Court held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned," but rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden, 477 U.S. at 181 (quoting Donnelly v, DeChristoforo, 416 U.S. 637, 643 (1974)).  "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial."  James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).  Indeed, the Eighth Circuit Court of Appeals has found that it has "an exceptionally limited review of this issue" due to the strict due process standard of constitutional review, the deferential standard mandated by the AEDPA, and the court's less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial.  Id.

At the time Petitioner's conviction became final, the law was clearly established that a prosecutor's misconduct violates due process if the defendant was prejudiced by the prosecutor's actions to the extent that the proceeding was fundamentally unfair.  Donnelly v. DeChristoforo, 416 U.S. 637 (1974).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips 455 U.S. 209, 219 (1982).

Petitioner raised these claims on direct appeal, and, after consideration of the claims for plain error inasmuch as the issue was not preserved for appeal, the Missouri Court of Appeals denied Petitioner relief finding no claim of error establishing a manifest injustice or an exceptional

circumstance. (Resp. Exh. E at 3, 5-8). Inasmuch as Petitioner does not challenge the factual findings made by the state court, such findings are presumed to be correct. 28 U.S.C. § 2554(e)(1).

A review of the record herein does not demonstrate that the prosecutor's remarks were so egregious as to fundamentally infect the entire trial or pervasive enough to render the result of the trial unreliable. Even assuming arguendo that the prosecutors' comments were improper, it cannot be said that the comments rose to the level of a constitutional violation or that absent such comments, the jury could not have returned a guilty verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (on a habeas petition, the court's review of any improper reference is to determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict") (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Therefore, because Petitioner has failed to demonstrate that the prosecutor's comments rendered his entire trial fundamentally unfair, the claims raised in Ground 2 of the instant petition is without merit.

Inasmuch as the Missouri Court of Appeals determined that Petitioner failed to demonstrate that, absent the prosecutor's comment, the verdict would have been different, it cannot be said that its determination runs "contrary to" clearly established law that the determination whether to grant a mistrial is within the sound discretion of the trial court. Petitioner offers no evidence that the prosecutor's comments influenced the outcome of the trial or that the comments produced a fundamentally unfair trial or resulted in a violation of Petitioner's due process rights. As such, Petitioner has failed to establish any grounds that would necessitate a mistrial. Nor can it be said that the Missouri Court of Appeals' determination constitutes an unreasonable application of this clearly established law. Therefore, the claims raised in Ground 2 of the instant petition should be denied.

## C.  Ground 3

In Ground 3 of the instant petition, Petitioner claims that he received ineffective assistance of trial counsel in that counsel failed to investigate and elicit testimony from Petitioner, his mother Charlene Cotton, Lillie Clark, Antwan Clark, Antonio Moore, and Demico Moore who would have testified as to specific acts of violence committed by the victim prior to the shooting as well as to the victim's reputation for violence.

Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the motion.  (Resp. Exh. F at 4, 15-40, 52-59; Resp. Exh. H at 6-32).  After review of the merits of the claim, the Missouri Court of Appeals remanded to the post-conviction court for consideration of whether counsel was ineffective for failing to call Charlene Cotton, Lillie Clark, Antwan, Clark, Antonio Moore, and Linda Moore as witnesses and denied Petitioner relief in all other respects. (Resp. Exh. J; State v. Cotton, 25 S.W.3d 507 (Mo. Ct. App. 2000)).

In his post-conviction motion and appeal, Petitioner claimed ineffective assistance of trial counsel for failing to call Charlene Cotton, Lillie Clark, Antwan Clark, Antonio Moore, and Linda Moore and for failing to elicit evidence from Petitioner.  Upon review of the claim, the Missouri Court of Appeals opined that the court agreed with Petitioner and remanded to the post-conviction court for further proceedings.  In particular, the Missouri Court of Appeals noted in its written decision:

> The state agrees with defendant's contention that the trial court erred in denying an evidentiary hearing on the claims that counsel was ineffective for failing to investigate and call Charlene Cotton, Lillie Clark, Antwan Clark, Antonio Moore and Linda Moore because defendant alleged sufficient facts not conclusively refuted by the record which, if true, would support his claim for relief.   The state does not mention, and apparently does not agree with [*sic*] claim that his counsel was ineffective in failing to elicit testimony from defendant as to his knowledge of victim's reputation and violent acts.  It disputes only defendant's contention that counsel was

ineffective in failing to call Demico Moore, because such decision constituted sound trial strategy.

We agree as to the consideration of whether counsel was ineffective for failing to call Charlene Cotton, Lillie Clark, Antwan Clark, Antonio Moore and Linda Moore and remand to the trial court for further proceedings.

Considering defendant's allegations of counsel's ineffectiveness in his the[*sic*] failure to elicit testimony from defendant at trial as to his knowledge of the victim's reputation and bad acts, we find that defendant has, in his motion, alleged grounds which, if true and not refuted by the record, would entitle him to relief on his claim that trial counsel was ineffective in failing to elicit from defendant, while he was on the stand, evidence of victim's reputation and specific prior violent acts. Although defendant testified at trial as to one specific act of violence by the victim, that victim had threatened him via his mother, he alleged in his motion that he would have testified to other specific violent acts by victim and of victim's reputation for violence. Defendant also alleged that his testimony would have aided in his defense, as he would have testified that knowledge of those acts and reputation caused him to kill the victim in self-defense, increasing his chances of acquittal or mandating the judge to give a self defense instruction to the jury. Thus, we remand to the trial court for an evidentiary hearing as to whether counsel was ineffective in failing to elicit evidence.

(Resp. Exh. J at 3-4; <u>Cotton</u> 25 S.W.3d at 509-10).

On remand and after an evidentiary hearing, the post-conviction motion court denied Petitioner's request for relief based on trial counsel's alleged ineffectiveness for failing to investigate, elicit testimony, and call witnesses to substantiate his self-defense claim. (Resp. Exh. M at 14-19; Resp. Exh. L at 2-4). After review of the merits, the Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction relief. (Resp. Exh. O). In relevant part, the Missouri Court of Appeals opined as follows:

Movant claims the motion court erred in denying his motion because the record does not support the decision. Movant argues his counsel was ineffective for failing to investigate and present witnesses who would have testified to specific acts of violence and reputation of the victim.

This court's review of a denial of postconviction relief is limited to determining whether the motion court's findings and conclusions are "clearly

erroneous." A finding of "clearly erroneous" only occurs if upon reviewing the entire record the court is left "with a definite and firm impression that a mistake has been made." With respect to ineffective assistance of counsel claims, the movant must prove (1) his attorney did not exercise the customary skill and diligence of a reasonably competent attorney and (2) that movant was thereby prejudiced. Both prongs of this test must be met before a movant can prevail on an ineffective assistance claim.

The attorney's performance must be reasonable considering all of the circumstances. Due to the difficulties in evaluating counsel's assistance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Choices in strategy made after a thorough inquiry into the relevant law and facts are "virtually unchallengeable." Decisions made prior to such thorough inquiry are also reasonable to the extent that reasonable professional judgments support the limitations on the inquiry. Therefore, particular decisions not to investigate must be reviewed by reasonableness under the circumstances, utilizing a strong measure of deference to the counsel's decisions.

To prevail specifically on a claim of ineffectiveness for failing to call witnesses, a movant must prove that (1) the witnesses could have been located after reasonable investigation, (2) if called the witnesses would have testified, and (3) the testimony of the witnesses would have established a viable defense. A trial counsel's decision not to call a witness is presumed to be trial strategy, unless movant can clearly establish otherwise.

Movant argues that he was prejudiced by his counsel's failure to investigate and call various witnesses. He contends that they would have testified to various specific acts of violence committed by the victim and provided reputation evidence. Movant informed his counsel the morning of trial about these witnesses and changed his alibi defense to self-defense. Although the witnesses were available in the courtroom, counsel did not call them to testify. Prior to this, Movant never mentioned his previous history with the victim to his counsel.

The motion court found that a lawyer under similar circumstances could have decided it was too risky to call witnesses who had not been previously investigated or interviewed. The motion court also concluded that Movant prejudiced his own cause. In fact, the motion court noted that under the circumstances, his counsel could have been considered ineffective for calling these witnesses to testify without prior investigation or interviewing.

Movant failed to establish that his counsel's assistance was unreasonable under the circumstances. Movant testified at the hearing, that up until the morning of trial Movant had informed his counsel only of the claim for an alibi at the time of the victim's murder. Up until this point, counsel had no reason to investigate or believe

another defense was available. Even after Movant informed counsel of the new defense and potential witnesses, however, there was not enough time to investigate the witnesses thoroughly prior to placing them on the stand. The counsel did, however, modify the Movant's defense strategy with the most reliable evidence available to him. Under these circumstances, it is unlikely that any counsel would have called those witnesses to the stand.

Therefore, it was reasonable for the counsel not to call the witnesses at trial. Furthermore, Movant was not prejudiced. Movant did testify to some of the issues he brought to his counsel the morning of trial. Therefore, the jury did hear at least part of the evidence Movant desired. Also, these witnesses failed to testify at the postconviction relief hearing as to what their testimony would have been. The conclusions of the motion court are not "clearly erroneous."

(Resp. Exh. O at 2-4 (internal citations omitted)).

The state court's rejection of Petitioner's claims constituted adjudication on the merits of those claims and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where

it should apply.  <u>Carter</u>, 255 F.3d at 592 (citing <u>Williams</u>, 529 U.S. at 407).  "Federal habeas

relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely

erroneous or incorrect."  <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410-11).

At the time Petitioner's conviction became final, the law was clearly established that the Sixth

Amendment guarantees a criminal defendant the right to effective assistance of counsel.  <u>Strickland</u>

<u>v. Washington</u>, 466 U.S. 668, 687 (1984).  To prevail on a claim of ineffective assistance of counsel,

a habeas petitioner must show that 1)  his counsel's performance was deficient, and 2)  the deficient

performance prejudiced his defense.  <u>Id.</u>  In evaluating counsel's performance, the basic inquiry is

"whether counsel's assistance was reasonable considering all the circumstances."  <u>Id.</u> at 688.

Petitioner must show that his attorney's errors were so serious that they deprived him of his Sixth

Amendment right to counsel and denied him his right to a fair trial.  <u>Id.</u> Judicial scrutiny of counsel's

performance must be highly deferential, and the petitioner must overcome the "strong presumption"

that the challenged action might be considered sound trial strategy.  <u>Id.</u> at 689.  "A fair assessment

of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from the counsel's perspective at the time."  <u>Id.</u>  In deciding a claim of ineffective assistance

of counsel, the court must examine the specific "acts or omissions of counsel that are alleged not to

have been the result of reasonable professional judgment," and then "determine whether, in light of

all of the circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance."  <u>Id.</u> at 691.  In order to satisfy the prejudice prong, Petitioner must

demonstrate that there is a reasonable probability that, but for counsel's errors, the result would have

been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

The Missouri Court of Appeals set out the Strickland standard for ineffective assistance of counsel and noted how "[c]hoices in strategy made after a thorough inquiry into the relevant law and facts are 'virtually unchallengeable.'" (Resp. Exh. O at 3). In particular, the Missouri Court of Appeals found no prejudice to Petitioner inasmuch as counsel "under similar circumstances could have decided it was too risky to call witnesses who had not been previously investigated or interviewed." (Id.). Indeed, Petitioner first apprised trial counsel the morning of trial about these witnesses and his previous history with victim and changed his alibi defense to self-defense. (Id.).

The state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d). Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Petitioner Michael Cotton's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 4) be dismissed without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to

this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal

questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  10th   day of May, 2006.

      /s/ Terry I. Adelman
      UNITED STATES MAGISTRATE JUDGE